## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANDREW BARFUSS | ) | Case No. 14-51908-ahws |
| | ) | |
| Debtor | ) | |
| | ) | |
| RONALD I. CHORCHES, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| ANDREW BARFUSS | ) | |
| | ) | |
| Plaintiff | ) | Adv. Pro. No. 15-05045 |
| v. | ) | |
| | ) | |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT

Defendant The Pennsylvania State University ("Penn State"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), respectfully moves that the Court dismiss the complaint filed in the above-captioned adversary proceeding by plaintiff Ronald I. Chorches, Chapter 7 Trustee for the Estate of Andrew Barfuss ("the Plaintiff"), because the Plaintiff has failed to state a claim upon which relief can be granted.  Pursuant to Fed. R. Bankr. P. 7012(b), to the extent that the Court declines to dismiss any of the Plaintiff's claims, Penn State does not consent to the final adjudication of such claims in the Bankruptcy Court and Penn State specifically asserts its right to a jury trial.  In further support of this Motion, Penn State files herewith its Memorandum of Law.

Dated at Bridgeport, Connecticut, this 24th day of November, 2015.

<div style="margin-left:40%">

THE PENNSYLVANIA STATE UNIVERSITY

By:    */s/ Patrick R. Linsey*
MATTHEW K. BEATMAN (ct08923)
PATRICK R. LINSEY (ct29437)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th floor
Bridgeport, CT  06604
Tel: (203) 368-4234
Fax: (203) 549-0424
Fax: (203) 549-0889
mbeatman@zeislaw.com
plinsey@zeislaw.com
Its Attorneys

</div>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANDREW BARFUSS | ) | Case No. 14-51908-ahws |
| | ) | |
| Debtor | ) | |
| | | |
| RONALD I. CHORCHES, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| ANDREW BARFUSS | ) | |
| | ) | |
| Plaintiff | ) | Adv. Pro. No. 15-05045 |
| v. | ) | |
| | ) | |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT**

Defendant The Pennsylvania State University ("Penn State"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), respectfully submits this memorandum of law in support of its Motion to Dismiss the complaint filed by plaintiff Ronald I. Chorches, Chapter 7 Trustee for the Estate of Andrew Barfuss ("the Plaintiff").

## I.    PRELIMINARY STATEMENT

The Court should dismiss the Plaintiff's complaint, because the Plaintiff has failed to plead adequate facts and because the Plaintiff's claims are legally defective.  This adversary proceeding is part of a recent and unfortunate trend in the District of Connecticut, whereby Chapter 7 trustees sue institutions of higher learning trying to "claw back" contributions made by debtors to their children's higher education as purported fraudulent transfers.  No court in this

judicial district has yet analyzed such a claim's viability.  Penn State respectfully requests that this Court conduct such analysis and, as have two different bankruptcy courts in the Western District of Pennsylvania, reject this type of claim.  The claims in the Plaintiff's complaint ignore the societal and practical realities in which contemporary families live and raise children and fail to grasp what, to most parents, seems obvious:  That reasonably equivalent value is received in return for contributions made towards the college education of one's son and daughter.

The Plaintiff's complaint is also inadequately pleaded under the standard set by the United States Supreme Court in Ashcroft v. Iqbal, because its claims are based largely on mere recitations of the elements of fraudulent transfer statutes without any particular factual allegations to plausibly assert, inter alia, the debtor's insolvency at the times the alleged transfers were made.  Finally, the Plaintiff's state law claim is additionally defective, because it is pleaded under Connecticut statute, while Pennsylvania law controls the circumstances relevant to this adversary proceeding.  Therefore, and for the reasons more thoroughly discussed herein, the Court should dismiss the Plaintiff's complaint with prejudice.

## II.    FACTUAL BACKGROUND AND NATURE OF PLAINTIFF'S CLAIM

1.    On December 17, 2014 (the "Petition Date"), the debtor, Andrew Barfuss (the "Debtor"), filed a voluntary petition for bankruptcy protection under Chapter 7 (the "Chapter 7 Case") of Title 11 of the United States Code (the "Bankruptcy Code").

2.    The Plaintiff is the Chapter 7 Trustee of the bankruptcy estate in the Chapter 7 Case.

3.    Penn State is a state-related institution and instrumentality of the Commonwealth of Pennsylvania subject to Pennsylvania nonprofit corporation laws.  Penn State is a world-class university and a leader in higher education, carrying out its missions of teaching, research and

service in challenging times for academic institutions across our nation. Penn State's largest campus and administrative and research hub is located in University Park, Pennsylvania, and it educates more than 100,000 students at its more than twenty campuses.

4.  On or about August 21, 2015, the Plaintiff filed his complaint (D.I. 1[1], the "Complaint") commencing the above-captioned adversary proceeding (the "Adversary Proceeding") against Penn State.

5.  The Adversary Proceeding principally concerns payments allegedly made by the Debtor towards the cost of the college education of two of his children, Chris Barfuss ("Chris") and Molly Barfuss ("Molly," and, together with Chris, the "Children") at Penn State.[2]  (See Complaint at 2.)

6.  The Complaint does not allege that the Children were financially independent during their college studies.

7.  The Complaint is comprised of two claims. The first claim (the "First Claim") alleges, pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550 and 551, that transfers allegedly made by the Debtor within two years of the Petition Date towards college tuition and expenses (the "Two-Year Tuition Payments") for his Children constitute constructive fraudulent transfers under the Bankruptcy Code. (See Complaint at 3-4.)

8.  The second claim (the "Second Claim") alleges, pursuant to Conn. Gen. Stat. §§ 52-552e(a)(2) and 52-552f(a) (the "Connecticut Uniform Fraudulent Transfer Act," or "CUFTA"), that transfers allegedly made by the Debtor within four years of the Petition Date

---

[1] Except where otherwise indicated, "D.I." refers to document numbers of documents filed in this Adversary Proceeding.

[2] The Complaint alleges that Chris and Molly "were students at Penn State," and that they "have been over the age of 18" at all relevant times. (Complaint at 2.) The Complaint does not allege that the Children attended Penn State in anything other than an undergraduate capacity.

towards college tuition and expenses (the "Four-Year Tuition Payments" and, together with the Two-Year Tuition Payments, the "Tuition Payments") for his Children constitute constructive fraudulent transfers under Connecticut state law.  (See Complaint at 4-8.)

9.      Even assuming such Tuition Payments were made, nowhere in the Complaint does the Plaintiff allege the Debtor was not obligated, expected, or otherwise responsible to contribute to his Children's college education.

10.     Rather, the Plaintiff merely contends, in conclusory fashion and without supporting factual allegations, that the Debtor was insolvent over a period of four years and that the Debtor received less than or did not receive reasonably equivalent value in exchange for the Tuition Payments.  (See Complaint, First Claim, ¶¶ 16-19; Second Claim, ¶¶ 24-25.)

11.     The Plaintiff's allegation that the Adversary Proceeding constitutes a "core" proceeding is incorrect.  (See Complaint, Factual Background, ¶ 12.)

12.     Rather, as the United States Supreme Court recently explained, a chapter 7 trustee's fraudulent transfer claims are "not … core," because "Article III [of the United States Constitution] does not permit these claims to be treated as 'core.'" Exec. Bens. Ins. Agency v. Arkison, 134 S. Ct. 2165, 2174 (2014) (holding these are Stern claims, which the bankruptcy court lacks constitutional authority to finally determine); see also Stern v. Marshall, 131 S. Ct. 2594, 2608 (U.S. 2011).

13.     Pursuant to Fed. R. Bankr. P. 7012(b), to the extent that the Court declines to dismiss any of the Plaintiff's claims, Penn State does not consent to the final adjudication of such claims in the Bankruptcy Court and Penn State specifically asserts its right to a jury trial.

### III.    LEGAL STANDARD

**A.    MOTION TO DISMISS STANDARD**

Fed. R. Civ. P. 12(b)(6) is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b).

> In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief, the court "must accept as true all of the factual allegations contained in the complaint." . . . . In addition, the court draws all reasonable inferences from the factual allegations in favor of the plaintiff.

In re Trinsum Group, Inc., 466 B.R. 596, 605 (Bankr. S.D.N.Y. 2012). The "facts are taken from the well-pleaded factual allegations of the complaint." Bryant v. New York State Educ. Dep't, 692 F.3d 202, 208 (2d Cir. 2012). This includes "documents attached to the complaint, documents incorporated by reference in the complaint, and public records." Id.

A motion to dismiss should be granted if the Complaint fails to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" . . . . [The] tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.

Id. at 678-79 (citations omitted). Put another way, a complaint must make a showing supported by factual allegations, rather than unsupported conclusions, in order to survive a motion to dismiss. Id. at 556 n.3.

**B.      STANDARD  RE: CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS**

Section 548(a)(l)(B) of the Bankruptcy Code authorizes a trustee to avoid a transfer of an interest in property of the debtor under a theory of constructive fraud.   Section 548(a)(1) provides, in relevant part:

> The trustee may avoid any transfer … of an interest of the debtor in property … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> …
> (B)
>> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>> (ii)
>>> (I)      was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>> (II)      was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>> (III)    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>> (IV)    made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Conn. Gen. Stat. § 52-552e requires that a plaintiff show that no reasonably equivalent value was given in exchange for the relevant transfer or obligation.   Under Connecticut law, the elements of constructive fraudulent transfer must be proven to a more exacting "clear and convincing" standard.   See In re Carrozzella & Richardson, 302 B.R. 415, 419 (Bankr. D. Conn. 2003) (Dabrowski, J.); Patrocinio v. Yalanis, 4 Conn. App. 33, 492 A.2d 215, 217 (1985); Tessitore v. Tessitore, 31 Conn. App. 40, 623 A.2d 496, 498 (1993); Dieter v. Dieter, 54 Conn. App. 481, 737 A.2d 926, 938 (1999).   Neither the federal nor Connecticut's fraudulent transfer statutes define "reasonably equivalent value."

## IV.    LAW AND ARGUMENT

**A.    THE COMPLAINT MUST BE DISMISSED, BECAUSE IT CATEGORICALY FAILS TO PLEAD FACTS REGARDING INSOLVENCY**

The Court should dismiss the Complaint, because the Plaintiff fails to allege any facts whatsoever to support his bald assertions that the Debtor was insolvent or had unreasonably small capital for periods of two and four years prior to the Petition Date.  Under Iqbal and Twombly, sufficient facts must be alleged such that the Court may evaluate the plausibility of a plaintiff's claims.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  In the present context, the Plaintiff's mere recitation of "the elements of constructive[] fraudulent transfer is inadequate to satisfy Iqbal and Twombly."  See In re Walter, 462 B.R. 698, 708 (Bankr. N.D. Iowa 2011).

In In re Trinsum Group, Inc., a bankruptcy court in the Southern District of New York dismissed a constructive fraudulent transfer claim brought under New York law, which like the claims implicated in this Adversary Proceeding, contains an insolvency element.  460 B.R. 379, 392-93 (2011).  The plaintiff in that case did allege some facts relevant to the issue of solvency, including year-to-year percentage declines in the debtors' revenue levels and increases in their debt levels.  Id.  Nevertheless, the Trinsum Group court analyzed these allegations and determined that they were insufficient, because they did "not rule out the possibility that the Debtors may have had a reserve such that they were not insolvent or rendered insolvent."  Id.  Thus, the court held that without "more detailed information, the Amended Complaints fail to sufficiently plead the insolvency element."  Id.

The burden is on the Plaintiff to prove the Debtor's insolvency.  See, e.g., In re Bunnenberg, 2008 Bankr. LEXIS 4805, *21 (Bankr. E.D.N.Y. Dec. 5, 2008); In re Richardson,

2004 U.S. Dist. LEXIS 19635, *3 (D. Conn. Sept. 28, 2004) (under CUFTA, the trustee must prove insolvency, and the other elements of § 52-552e, according to a more exacting clear-and-convincing standard).  Absent particular factual allegations, the mere occurrence of the Debtor's bankruptcy filing does not provide plausibility to support bare assertions of insolvency – much less bare assertions stretching back for periods of years.  Where presumptions of insolvency are to be afforded, such is provided specifically by statute.  For example, the Bankruptcy Code itself, in the context of preference claims, provides that the trustee is entitled to a presumption of insolvency for only ninety days.  11 U.S.C. § 547(f).  In In re Caremerica, Inc., the bankruptcy court in the Eastern District of North Carolina noted as much in dismissing a preference claim that asserted insolvency for a period of one year prior to the bankruptcy filing without alleging supporting facts.  409 B.R. 737, 752 (Bankr. E.D.N.C. 2009).

> Because a debtor must be insolvent on the date of the transfer in order for the trustee to be successful in a claim based on § 547(b), it follows that the trustee must allege facts sufficient to show that such insolvency is plausible.  In this case, the trustee asserts that "[e]ach preferential transfer was made while the [t]ransferor was insolvent."  Without factual assertions in support of the debtor's insolvency, however, the trustee's conclusory statement fails to satisfy the first prong under Iqbal.  It follows that the trustee has failed to assert a claim supporting entitlement to relief.

Id.  By contrast, the Bankruptcy Code does not provide for any presumption of insolvency in the context of a trustee's fraudulent transfer claim.  The Caremerica decision likewise dismissed constructive fraudulent transfer claims pleaded in a manner similar to the First Claim in the Plaintiff's Complaint – claims that merely recited the language of Section 548(a)(1)(B) of the Bankruptcy Code – because the trustee had failed to allege "facts supporting the debtors' insolvency at the time of the transfer."  409 B.R. at 755-56.

In this Adversary Proceeding, the allegations of the Complaint concerning insolvency and insufficient capital do not allege any facts particular to this case but instead only parrot language

from the Bankruptcy Code and Connecticut General Statutes to assert insolvency and insufficient capital for periods of two and four years.  With respect to the Plaintiff's First Claim, paragraphs 17, 18 and 19 of the Complaint are practically verbatim recitations of subparagraphs (I), (II) and (III) of § 548(a)(B)(2) of the Bankruptcy Code.  (Complaint at 4.)  Similarly, with respect to the Plaintiff's Second Claim, paragraph 25 of the Complaint is a near verbatim recitation of Conn. Gen. Stat. § 52-552e(a)(2) and (in part) § 52-552f.  (Complaint at 6.)

The Plaintiff is not entitled to <u>any</u> presumption of insolvency with respect to its fraudulent transfer claims, because no such presumption exists in the Bankruptcy Code or in Connecticut statutes.  Even where legislators have chosen to provide such a presumption (with respect to preference claims), such only holds for ninety days.  Determining that the Complaint plausibly supports the Plaintiff's claims would require the Court to presume insolvency for up to four years prior to the Petition Date.  Thus, as in <u>Caremerica</u>, the allegations contained in the Plaintiff's Complaint "fall short of the plausibility threshold" applicable under <u>Iqbal</u> and <u>Twombly</u>.  409 B.R. at 756.  Even where a trustee alleged specific figures concerning debtors' debts and revenues, the <u>Trinsum Group</u> court analyzed the figures to determine whether insolvency was plausibly alleged.  460 B.R. at 392-93.  Here, the Complaint's complete absence of allegations particular to the Debtor's financial situation makes the outcome obvious.  The Plaintiff's failure to allege any specific facts relevant to solvency renders the Complaint defective on its face and it must be dismissed.

**B.     THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE THE ABSENCE
OF REASONABLY EQUIVALENT VALUE AND SO MUST BE DISMISSED**

**1.     Facts Alleged in the Complaint
Demonstrate that the Debtor <u>Did</u> Receive Reasonably Equivalent Value**

9

The Plaintiff fails to state a plausible claim, because the Complaint is bereft of any specific allegations supporting the deficiency or absence of reasonably equivalent value. See 11 U.S.C. § 548(a)(1)(B)(i); Conn. Gen. Stat. § 52-552e. Again, the Plaintiff has simply offered conclusory allegations that the Debtor received less than or did not receive reasonably equivalent value. (Complaint, First Claim, ¶ 16, Second Claim, ¶ 24.) Such conclusory pleading is, in and of itself, fatal to the Plaintiff's Complaint. The Plaintiff's Complaint is even further defective, however, in that (while no specific allegations support the Plaintiff's conclusions concerning reasonably equivalent value) several allegations – particularly that the Debtor's Children attended Penn State and that the Tuition Payments were paid towards his Children's college tuition and fees – directly contradict the Plaintiff's position. Such allegations demonstrate that reasonably equivalent value was given.

Determining the existence of "reasonably equivalent value depends on all the circumstances surrounding the transaction." In re Adler, Coleman Clearing Corp., 263 B.R. 406, 466 (S.D.N.Y. 2001). Relevant case law explains that "reasonably equivalent value" may include "any benefit" to the debtor, whether such value is "direct or indirect." The determination of whether value was given under Section 548 depends on the circumstances of each case and not on a fixed mathematical formula. See Barber v. Golden Seed Co., Inc., 129 F.3d 382, 387 (7th Cir. 1997); In re R.M.L., Inc., 92 F.3d 139, 145 (3d Cir. 1996).

The Plaintiff contends that the Debtor did not receive reasonably equivalent value from Tuition Payments that allegedly helped fund his Children's college education. The Plaintiff is wrong. Indeed, several courts have specifically considered whether parents received reasonably equivalent value directly and indirectly in return for contributing to their children's college educations and have answered in the affirmative. In re Cohen, a trustee challenged $102,573

in payments that defendant parents made for their children's post-secondary educations, including $46,059.97 for their son's undergraduate education, $7,562 for their daughter's undergraduate education and $39,205 for their daughter's graduate education.   2012 Bankr. LEXIS 5097 (Bankr. W.D. Pa. Oct. 31, 2012) (vacated and remanded in part on other grounds).

The trustee in Cohen attempted to argue that parents residing in Pennsylvania have no legal duty to provide for the education of their children beyond the age of eighteen or the completion of high school, whichever occurs later.   The bankruptcy court rejected this argument, explaining:

> While the Pennsylvania legislature has not yet enacted a statute that requires parents to pay for their children's post-secondary education, this Court holds that such expenses are reasonable and necessary for the maintenance of the Debtor's family for purposes of the fraudulent transfer statutes only. This holding, however, is limited to payments the Defendants made for the children's undergraduate education as such children in graduate school are well into adulthood.

2012 Bankr. LEXIS 5097 at *28-29.   Thus, the Cohen court held that the trustee had failed to demonstrate that payments made towards the debtor's children's undergraduate education were not made for reasonably equivalent value.

Subsequent to Cohen, a bankruptcy court in the Western District of Pennsylvania rejected a trustee's similar attempt to advance a fraudulent transfer claim (under Pennsylvania's uniform fraudulent transfer act) concerning payments made for the college education of the debtor's children.   In re Oberdick, 490 B.R. 687 (Bankr. W.D. Pa. 2013).   In Oberdick, the trustee challenged $82,536.22 of college expenditures related to the undergraduate education of one of the children at the University of Chicago and the other at Robert Morris University.   As in Cohen, the trustee argued that parents were not legally obligated to contribute towards the education of their children beyond the age of 18, or graduation from high school, whichever

11

occurs first.  Id. at 711.  And as in Cohen, the bankruptcy court rejected the trustee's argument.

Rather, in explaining its rationale, the Oberdick court stated:

> Even though there may not strictly be a legal obligation for parents to assist in
> financing their children's undergraduate college education, in following Judge
> Deller's lead in the Cohen case, this Court has little hesitation in recognizing that
> there is something of a societal expectation that parents will assist with such
> expense if they are able to do so.

Id. at 712.

In the present Adversary Proceeding, the Plaintiff has alleged no facts to substantively

distinguish his claim from the rationales that defeated trustee claims in Cohen and Oberdick.  In

those cases, as here, trustees sought to claw back payments made by debtors towards their

children's college educations.  This Court should recognize the same obligation, expectation and

responsibility that the Cohen and Oberdick courts understood and invoked in determining that

contributions to the college education of one's children are supported by reasonably equivalent

value.  Here it was the Debtor's commendable motive – to help provide first-rate college

educations for his Children – that compelled the Debtor to make the Tuition Payments, rather

than any purpose to deprive the Debtor's creditors of resources.  The Plaintiff presumably agrees,

inasmuch as he has not asserted intentional fraudulent transfer claims in his Complaint.  Thus,

the Plaintiff's claims should be dismissed.

## 2.    The Debtor and His Children Were Part of an Integrated Economic Unit

Consistent with case law from within this circuit, the Court should analyze the Tuition

Payments within the context that they were made – an economically integrated family unit.  A

recent decision from the bankruptcy court in the Eastern District of New York underscores the

relevance of this consideration.  See generally In re Akanmu, 502 B.R. 124 (Bankr. E.D.N.Y.

2013).  The Akanmu case concerned a trustee's attempt to recover payments made towards the

private school tuition of the debtor's minor children.  Id.  In addition to considering the age of

the children in question, the Akanmu court discussed the economic unity of the parents and their

children in finding that parents received reasonably equivalent value with respect to the tuition

payments.

> The trustee's claims are based on a fundamentally flawed legal theory that is, moreover, at odds with common sense. The education provided by the defendants to these minor children constitutes both a direct and indirect benefit to their parents, who, with their children must be considered a single economic unit for purposes of this analysis.

Id. at 136.  In that reasonably equivalent value was present, the court dismissed the trustee's

adversary complaint.  Id. at 128-29.

The economic integration of the modern family unit is similarly applicable to college-age

students.  Indeed, this is not only accepted; it is presumed for purposes of federal and state law.

Federal financial aid policy is premised upon the understanding that parents contribute to their

children's college education.  Students requesting federal financial assistance must complete the

Free Application for Federal Student Aid (the "FAFSA"), which the United States Department of

Education (the "DOE") utilizes to determine students' eligibility for financial assistance.  20

U.S.C. § 1087oo.  The FAFSA specifically requires students to disclose their parents' financial

information, operating under the assumption that college students are dependent upon their

parents for financial support.  See FAFSA for July 1, 2014-June 30, 2015, DOE available at

https://fafsa.ed.gov/fotw1415/pdf/PdfFafsa14-15.pdf (last visited Nov. 18, 2015).[3]  Eligibility for

federal aid is then determined based, among other things, upon an applicant's "family

contribution," which is "the amount which the student and the student's family may be

_____

[3] Parental information is required to be submitted for "dependent students" who, generally speaking, are younger than twenty-four and are unmarried.  The test for determining if a student is dependent is set forth in "Step Three" of the FAFSA.

reasonably expected to contribute toward the student's postsecondary education …" and which calculates "the parents' contribution" based upon a statutory formula.  20 U.S.C. §§ 1087mm (emphasis added), 1087oo.  Laws in many states similarly recognize the role that parents play in financing their children's college education.  For example, in Connecticut, marital dissolution statutes permit courts to require certain parents to contribute to the cost of their children's higher education after a divorce.  See Conn. Gen. Stat. § 46b-56c.[4]  Many other states have similar laws.  See "Who Pays for College Tuition? Top Factors for Divorcing Women to Consider," Forbes (Jan. 24, 2012) available at http://www.forbes.com/sites/jefflanders/2012/01/24/who-pays-for-college-tuition-top-factors-for-divorcing-women-to-consider/ (last visited Nov. 23, 2015) ("Most states allow courts to order the non-custodial parent to help pay for college.").

In this Adversary Proceeding, the Plaintiff has failed to allege that the Debtor's Children are financially independent from their father.  Thus, the Court should consider the Debtor's family unit in the customary context of a family wherein the parents contribute to the college tuition of their children and children are dependent upon such support.  In light of the economic reality applicable to the Debtor's family, the Court should find that the Plaintiff has failed to plausibly claim the absence of reasonably equivalent value and dismiss the Plaintiff's Complaint.

### 3. Even Assuming, Arguendo, That the Debtor Was Not Legally Liable to Make the Tuition Payments, the Debtor Nonetheless Received Reasonably Equivalent Value

The Plaintiff has not alleged that the Debtor bore no obligation, expectation or responsibility to contribute towards his Children's college education, and certainly the aforementioned features of federal and state law indicate, at minimum, a societal expectation that

---

[4] Penn State observes this feature of Connecticut law by way of example and without prejudice to its position that Pennsylvania's fraudulent transfer statutes govern the Plaintiff's state law fraudulent transfer claims.  (See infra at § IV(C).)

such contributions should be made.  However, to the extent that the Plaintiff would argue that the Debtor was not legally liable to make the Tuition Payments, such (even if true) would not change the result.  To the contrary, it is well established that a debtor may receive indirect value by paying debts for which he is not liable.  See, e.g., In re Tarin, 454 B.R. 179 (Bankr. D.N.M. 2011); In re Vansteinberg, 2003 Bankr. LEXIS 2069 (Bankr. D. Kan. Nov. 26, 2003); In re Gonzalez, 342 B.R. 165 (Bankr. S.D.N.Y. 2006).  In Tarin, the trustee sought to recover, on fraudulent transfer grounds, prepetition payments of expenses related to the debtors' daughter's wedding, including costs for the wedding planner, flowers, and decorations for a wedding party attended by the debtors, their daughter, and guests.  The court rejected the trustee's claims, ruling that the debtors received reasonably equivalent value "in the form of the flowers that they and their guests got to smell, the food that they and their guests got to eat, the music that they and their guests got to listen and dance to, and the like."  Id. at 183-84.

Similarly, in Vansteinberg, the trustee sought to recover, as fraudulent transfers, prepetition payments that the debtor had made to pay expenses concerning a horse titled exclusively in the name of his non-debtor wife.  The debtor in Vansteinberg did not ride the horse, nor was he even interested in horses, but he had agreed to pay the expenses like he paid for other family expenses.  Such payments, the court held, did not constitute fraudulent transfers. In re Vansteinberg, 2003 Bankr. LEXIS 2069, *16.  And in Gonzalez, the bankruptcy trustee sued Wells Fargo in an attempt to recover mortgage payments made by the debtor on a home owned by the debtor's former romantic partner, which home was occupied by her and the debtor's alleged son.  342 B.R. at 167-68.  The debtor spent time on weekends at the home with the child and contributed to household expenses, child care and school tuition, in addition to making mortgage payments.  Id.  Despite the trustee's argument that the debtor in that case had

no legal obligation to fund these costs, the <u>Gonzalez</u> court rejected the fraudulent transfer claim and found that "psychic" and other intangible benefits constituted reasonably equivalent value received by the debtor. <u>Id.</u> at 167-73.

The principle common to these cases is that reasonably equivalent value may be present absent legal liability to make a payment, especially where the payment concerns an immediate family member. This principle is equally applicable to this Adversary Proceeding. To the extent that the Debtor was not legally obligated to make the Tuition Payments, such payments were demanded by moral obligations, societal expectations and familial responsibilities. The Debtor received value in satisfying these demands, and he further received value in the form of psychic and emotional benefits resulting from the college education of his Children. Therefore, the Motion to Dismiss should be granted.

## C.  COUNT TWO SHOULD BE DISMISSED, BECAUSE PENNYSLVANIA LAW GOVERNS ANY STATE LAW FRAUDULENT TRANSFER CLAIM

The Plaintiff's Second Claim seeks relief under the Connecticut Uniform Fraudulent Transfer Act, which is inapplicable to the facts alleged in the Complaint under governing choice-of-law rules. Rather, to the extent that any state's fraudulent transfer statutes would apply, that state is Pennsylvania, where Penn State is located, where the Children were educated, and where the Debtor sent the Tuition Payments.[5]

In light of the fact that "federal choice of law rules are a type of federal common law, which federal courts have only a narrow power to create … bankruptcy courts confronting state

---

[5] Pennsylvania has its own statutes concerning fraudulent transfers, the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. §§ 5101 <u>et seq.</u> ("PUFTA"). Under PUFTA, and as discussed <u>supra</u> at § IV(B)(1), Courts have specifically held that the circumstances alleged by the Plaintiff in this case do not amount to constructive fraudulent transfers. <u>See</u> <u>In re Cohen</u>, 2012 Bankr. LEXIS 5097, *18 (Bankr. W.D. Pa. Oct. 31, 2012); <u>In re Oberdick</u>, 490 B.R. 687 (Bankr. W.D. Pa. 2013).

law claims that do not implicate federal policy concerns should apply the choice of law rules of

the forum state." In re Gaston & Snow, 243 F.3d 599, 601-02 (2d Cir. 2001). Thus, the standard

applied by Connecticut's state courts applies. The Defendants are unaware of any controlling

Connecticut authority governing choice of law in the context of fraudulent conveyance claims.

However, under Connecticut law, fraudulent transfer is a tort and thus the state's choice-of-law

rules governing tort claims applies. See Dealer Servs. Corp. v. Am. Auto Auction, Inc., 2013

Conn. Super. LEXIS 1103, *7 (Conn. Super. Ct. May 14, 2013) (stating fraudulent transfer was a

species of tort claim); see also ASARCO LLC v. Ams. Mining Corp., 382 B.R. 49, 62 (S.D. Tex.

2007) (because fraudulent transfer was a tort under Texas law, bankruptcy court applied Texas

conflicts rules governing torts).

Connecticut's conflicts of law standard governing torts utilizes the "most significant

relationship" test set forth in the Restatement (Second) of Conflict of Laws § 145. See O'Connor

v. O'Connor, 201 Conn. 632, 657-58 (1986); see also generally Restat 2d of Conflict of Laws, §

145 (2d ed. 1988). Section 145 of the Restatement (Second) provides as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are
determined by the local law of the state which, with respect to that issue, has
the most significant relationship to the occurrence and the parties under the
principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to
determine the law applicable to an issue include:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of
business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

Under this test, it is plain that Pennsylvania law applies to any tort claim concerning the

Tuition Payments, because Pennsylvania has the most significant relationship to the relevant

circumstances.  The Tuition Payments were sent to and received in Pennsylvania.  The education of the Children occurred in Pennsylvania.  Therefore, to the extent that any conduct causing injury occurred, it would have occurred in Pennsylvania.  For the same reasons, the relationship between the Debtor and Penn State was centered in Pennsylvania.  Further, Penn State is not only a Pennsylvania entity; it is a state-related entity and instrumentality of the commonwealth of Pennsylvania.

Practicality also makes clear that Pennsylvania has the most significant relationship with the facts at bar.  Penn State educates students (and, accordingly, receives tuition payments) from across the country and from all over the world.  See Admission and University Statistics, Penn State available at http://admissions.psu.edu/apply/statistics/ (last visited Nov. 18, 2015) (showing Penn State has many thousands of out-of-state students and more than 1,500 international students).  The Commonwealth of Pennsylvania has a much stronger interest in regulating the conduct of an institution of higher education within its borders than do the dozens of jurisdictions that might happen to send students to study there or where the families paying tuition and fees reside.  Cf. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 158 (2d Cir. 2012) (holding "New York, not Israel, has the stronger interest in regulating the conduct of New York-based banks operating in New York").  Therefore, because the Plaintiff has pleaded the Second Claim under a state statute that does not apply, the Second Claim must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiff's Complaint fails to plausibly claim that the Debtor received no reasonably equivalent value in exchange for the Tuition Payments, fails to adequately plead insolvency or lack of capital, and has sought relief under a state statute that does not apply.  Therefore, the Complaint must be dismissed, with prejudice.

Dated at Bridgeport, Connecticut, this 24th day of November, 2015.

The Pennsylvania State University,

By:    */s/ Patrick R. Linsey*
        MATTHEW K. BEATMAN (ct08923)
        PATRICK R. LINSEY (ct29437)
        ZEISLER & ZEISLER, P.C.
        10 Middle Street, 15th floor
        Bridgeport, CT  06604
        Tel: (203) 368-4234
        Fax: (203) 549-0424
        Fax: (203) 549-0889
        mbeatman@zeislaw.com
        plinsey@zeislaw.com
        Its Attorneys

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANDREW BARFUSS | ) | Case No. 14-51908-ahws |
| | ) | |
| Debtor | ) | |

_____

| | | |
|---|---|---|
| RONALD I. CHORCHES, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| ANDREW BARFUSS | ) | |
| | ) | |
| Plaintiff | ) | Adv. Pro. No. 15-05045 |
| v. | ) | |
| | ) | |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant | ) | |

**NOTICE OF RESPONSE DEADLINE RE:**
**DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT**

The Pennsylvania State University (the "Movant") has filed its Motion to Dismiss Adversary Complaint (the "Contested Matter") in the above-captioned adversary proceeding. Notice is hereby given that <u>any response to the Contested Matter must be filed with the Court no later than December 15, 2015</u>. In the absence of a timely filed response, the proposed order in the Contested Matter **<u>may</u>** enter without further notice and hearing. <u>See</u> 11 U.S.C. § 102 (1).

Dated at Bridgeport, Connecticut, this 24th day of November, 2015.

THE PENNSYLVANIA STATE UNIVERSITY

By: */s/ Patrick R. Linsey*
MATTHEW K. BEATMAN (ct08923)
PATRICK R. LINSEY (ct29437)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th floor
Bridgeport, CT  06604
Tel: (203) 368-4234
Fax: (203) 549-0424
Fax: (203) 549-0889
mbeatman@zeislaw.com
plinsey@zeislaw.com
Its Attorneys

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANDREW BARFUSS | ) | Case No. 14-51908-ahws |
| | ) | |
| Debtor | ) | |
| | ) | |
| RONALD I. CHORCHES, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| ANDREW BARFUSS | ) | |
| | ) | |
| Plaintiff | ) | Adv. Pro. No. 15-05045 |
| v. | ) | |
| | ) | |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant | ) | |

**[PROPOSED] ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT**

Upon defendant The Pennsylvania State University's ("Penn State") Motion to Dismiss Adversary Complaint (the "Motion") having come before the Court; the Court having reviewed the Motion and the Memorandum of Law filed therewith; there being due and adequate notice; and there being due and sufficient cause for the relief sought therein to be granted, and the Court being otherwise duly advised;

IT IS HEREBY ORDERED that Penn State's Motion is **GRANTED**; and

IT IS FURTHER ORDERED that the plaintiff's complaint in the above-captioned adversary proceeding is **DISMISSED WITH PREJUDICE**.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ANDREW BARFUSS | ) | Case No. 14-51908-ahws |
| | ) | |
| Debtor | ) | |
| | ) | |
| RONALD I. CHORCHES, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| ANDREW BARFUSS | ) | |
| | ) | |
| Plaintiff | ) | Adv. Pro. No. 15-05045 |
| v. | ) | |
| | ) | |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 24th day of November, 2015, true and accurate copies of (1) Defendant's Motion to Dismiss Adversary Complaint; (2) Memorandum of Law in Support of Defendant's Motion to Dismiss Adversary Complaint; (3) [Proposed] Order Granting Motion to Dismiss Adversary Complaint; and (4) Notice of Response Deadline Re: Defendant's Motion to Dismiss Adversary Complaint (collectively, the "Served Materials") were served via email to:

Marjorie R. Gruszkiewicz at ronaldchorches@sbcglobal.net; and
David W. Dulabon at dwd117@psu.edu; and

This is to further certify that on such date the Served Materials were served electronically on all appearing parties via operation of the Court's CM/ECF system.

Dated at Bridgeport, Connecticut, this 24th day of November, 2015.

THE PENNSYLVANIA STATE UNIVERSITY

By:     */s/ Patrick R. Linsey*
        MATTHEW K. BEATMAN (ct08923)
        PATRICK R. LINSEY (ct29437)
        ZEISLER & ZEISLER, P.C.
        10 Middle Street, 15th floor
        Bridgeport, CT  06604
        Tel: (203) 368-4234
        Fax: (203) 549-0424
        Fax: (203) 549-0889
        mbeatman@zeislaw.com
        plinsey@zeislaw.com
        Its Attorneys