**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| ANDREW BARFUSS | : | Case No. 14-51908 (ast) |
|     Debtor | : | |
| RONALD I. CHORCHES, TRUSTEE | : | |
|     Plaintiff | : | Adv. Pro. No. 15-05045 (ast) |
| | : | |
| v. | : | |
| | : | |
| THE PENNSYLVANIA STATE UNIV. | : | FEBRUARY 11, 2016 |
|     Defendant | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Ronald I. Chorches, Trustee, in his capacity as Chapter 7 trustee for the above captioned bankruptcy estate ("Plaintiff" or "Trustee"), hereby submits this memorandum of law in opposition to Pennsylvania State University's ("Defendant") Motion to Dismiss (CM/ECF #8).

**I.    Introduction**

On August 21, 2015, Plaintiff filed a complaint against Defendant seeking to avoid certain fraudulent transfers ("Complaint") pursuant to 11 U.S.C. §548(a)(1)(B) and Conn. Gen. Stat. §52-552e(a)(2) and Conn. Gen. Stat. §52-552f(a) made applicable by 11 U.S.C. §544(b)(1). The Trustee seeks to recover, pursuant to 11 U.S.C. §§544(b), 548(a), and 550(a) $104,989 in transfers made by Andrew Barfuss ("Debtor") at a time when he was insolvent, had unreasonably small capital or was unable to pay his debts as they became due and did not receive reasonably equivalent value for the transfers described herein. Defendant has moved to dismiss this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b)(6) which incorporates Fed. R. Civ. P. 12(b)(6). Defendant claims Plaintiff's Complaint (CM/ECF #1) fails to state a claim

1

upon which relief may be granted. Defendant's Motion should be denied.

## II.     Factual Background

On or about December 17, 2014, Debtor commenced these proceedings by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Complaint ¶3. Plaintiff was appointed Chapter 7 Trustee for the Debtor's estate. Complaint ¶4. The Debtor is the parent of Chris Barfuss and Molly Barfuss, who at all relevant times to this action, were at least 18-years-old. Complaint ¶5.

During the period November 2010 through December 2014, Chris Barfuss and Molly Barfuss were students enrolled with Defendant. Complaint ¶6. Defendant is a public, state-related university with its principal place of operation at University Park, State College, Pennsylvania. Complaint ¶2. From November 2010 through December 2014, the Debtor was insolvent and/or was unable to pay his debts as they became due. Complaint ¶¶7, 9. On the following dates, the Debtor made a series of transfers ("Transfers") to Defendant to pay for the tuition and other expenses of Chris Barfuss and Molly Barfuss:

| DATE | AMOUNT |
| --- | --- |
| November 10, 2010 | $12,391.00 |
| August 22, 2011 | $6,082.00 |
| August 22, 2011 | $5,143.00 |
| October 20, 2011 | $5,092.00 |
| October 31, 2011 | $6,224.00 |
| December 27, 2011 | $10,316.00 |
| December 27, 2011 | $4,946.00 |
| December 28, 2011 | $1,530.00 |
| January 19, 2012 | $6,336.00 |
| March 26, 2012 | $6,500.00 |
| March 26, 2012 | $5,000.00 |
| April 3, 2012 | $1,540.00 |
| April 10, 2012 | $5,808.00 |
| August 28, 2012 | $2,054.00 |
| April 4, 2013 | $6,430.00 |

| | |
|---|---|
| August 21, 2013 | $3,995.00 |
| October 16, 2013 | $3,950.00 |
| February 21, 2014 | $5,388.00 |
| July 24, 2014 | $1,851.00 |
| August 11, 2014 | $2,753.00 |
| November 13, 2014 | <u>$1,660.00</u> |
| | $104,989.00 |

The Debtor received no economic consideration for the transfers. Complaint ¶¶23, 24. As such, the Debtor's bankruptcy estate received no benefit for these transfers.

### III.    Standard of Review

In reviewing a motion to dismiss, the Court "must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief." Moultrie v. Carver Found, 2015 U.S. Dist. LEXIS 95109 *2 (D. Conn. 2015) citing Mirabilio v. Reg'l School District 16, 761 F.3d 212, 213 (2d Cir. 2014). In evaluating motions to dismiss, the standard to be applied to actions brought by the bankruptcy trustees is more lenient. Sarachek v. Jaffe, 2013 Bankr. LEXIS 1279 *10 (N.D. Iowa 2013); Friedman v. Am. Capital, Ltd., 2013 Bankr. LEXIS 4072 *7-8 (Bankr. D. Md. 2013).

The Defendant conflates the standard to survive a motion to dismiss with the evidentiary standard necessary to prove the facts alleged. Defendant asserts that Plaintiff must plead facts sufficient to prove its case by clear and convincing evidence in the Complaint. Defendant is wrong. The clear and convincing evidence standard only applies when the matter has gone to trial. Functionally, Defendant demands Plaintiff prove its case in the Complaint. This is contrary to law. So long as the complaint is factually plausible, a motion to dismiss should be denied.

3

## IV. Law and Argument

### A. The factual allegations of the Complaint are sufficient to survive a Motion to Dismiss.

#### 1. *Iqbal* only applies to legal conclusions, not factual allegations. Insolvency is a factual allegation which the Court must deem as true.

The Defendant claims that the plaintiff's Complaint is inadequately pleaded under the standards set by the U. S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009)(hereinafter referred to as "Iqbal".) In order to prove its case ***at trial***, Plaintiff must demonstrate the Debtor was insolvent at the time of the Transfers or became insolvent thereby. The Trustee does not need to include an analysis of the Debtor's assets and liabilities in the Complaint. The Defendant's reliance upon the Iqbal standard to dismiss this adversary proceeding is misplaced. The concern in Iqbal was that a complaint must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. at 678. The Supreme Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to ***legal conclusions***." Id. (emphasis added). In a parenthetical immediately afterwards, the Court stated that "for the purposes of a motion to dismiss we must take all of the ***factual allegations*** in the complaint as true. . . ." Id. (emphasis added).

Iqbal sets a clear line for pleadings analysis: (1) set aside legal conclusions without factual support, and (2) review the remaining allegations to determine plausibility. See Angell v. BER Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009); see also In re Tronox, Inc., 429 B.R. 73, 90 (Bankr. S.D.N.Y. 2010) ("Plaintiffs' allegations do not consist of legal conclusions that must be disregarded under the first step in *Iqbal*. . . . Since the allegations of the Complaint must be taken as true, Defendants cannot reasonably assert that the allegations are not plausible on their face.").

4

Defendant, like the Defendants in Tronox, confuses a factual allegation and a legal conclusion in its analysis. Whether a person is insolvent is a question of fact, not a legal conclusion. The definition is clearly laid out in 11 U.S.C. §101(32)(A): "The term 'insolvent' means—with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation. . . ." In other words, it is a factual condition codified by law, akin to defining someone as below the poverty line or in a particular tax bracket. Therefore, Plaintiff does not have to prove insolvency in the Complaint. In fact, Iqbal requires this Court to construe the factual allegation of insolvency as true when evaluating Defendant's motion to dismiss.

Defendant relies upon the standards of proof necessary to prevail at trial in an attempt to undermine the plausibility of Plaintiff's complaint. However, it is important to note, Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) (of which Iqbal is a derivative decision), states the plausibility standard "does not impose a probability requirement at the pleading stage[.]" Id. at 556. Instead, it "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim." Id. Here, the complaint's factual allegations of insolvency are sufficient to pass the Iqbal standard. Whether the Debtor was insolvent at the time of the transfers or became insolvent as a result thereof can be determined through discovery.

**2. Debtor never received reasonably equivalent value for the tuition payments he made.**

Defendant fatally misunderstands the "reasonably equivalent value" prong of 11 U.S.C. §548(a)(1)(B)(i). While the Bankruptcy Code does not define "reasonably equivalent value," it defines "value" as "property, or satisfaction or securing a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or a relative

5

of the debtor." 11 U.S.C. §548(d)(2)(A). Value can be in the form of either a direct or indirect benefit to the debtor, but the benefit must be an economic one. See In re Wilkinson, 196 F. App'x 337, 342 (6th Cir. 2006) ("Value can be in the form of either a direct ***economic*** benefit or an indirect ***economic*** benefit.") (emphasis added); In re Kelsey, 270 B.R. 776, 781 (9th Cir. BAP 2001) ("value is limited to economic or monetary consideration"); In re Treadwell, 699 F.2d 1050, 1051 (11th Cir. 1982) (holding that "love and affection" in exchange for monetary transfers was not reasonably equivalent value); In re Green, 268 B.R. 628, 651 (Bankr. M.D. Fla. 2001) (debtor's moral or family obligations to pay for their daughter's wedding is not reasonably equivalent value).

The purpose of the "reasonably equivalent value" prong in fraudulent transfer actions is to preserve the debtor's estate for the creditors. Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.), 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010). Whether the debtor feels he received reasonably equivalent value is irrelevant—the issue must be considered from a creditor's perspective. Reasonably equivalent value, as a concept, exists as security for creditors who have to look to the bankruptcy estate for satisfaction of their claims. Where capital flows out of an estate, a creditor must be assured that something equally valuable is coming into the estate that it can take. To this extent, Defendant's reading of the case law from the Western District of Pennsylvania (In re Cohen, 2012 Bankr. LEXIS 5097 (2012) and In re Oberdick, 490 B.R. 687 (2013)) is incorrect.

The Defendant relies upon In re Cohen to support the position that undergraduate education payments made for the children of a debtor provide reasonably equivalent value. This claim is unsupported by the case. The Court's analysis focused on the obligation of a parent to pay for undergraduate education for his children. Nowhere does the Court state the debtor

6

received reasonably equivalent value. Instead, the Court simply notes undergraduate education expenses "are reasonable and necessary for the maintenance of the Debtor's family." 2012 Bankr. LEXIS 5097 at *28. However, the Court does not discuss the extent of such necessity, nor does the Court evaluate this purported necessity in light of the debtor's obligations to his creditors. The critical vantage point in a bankruptcy proceeding is that of the creditors who look to the bankruptcy estate to satisfy their claims. In the case at bar, the Debtor paid Defendant directly, but the only direct benefits derived from such payments were to his children. The Debtor's estate, for whose benefit this action is taken, derived no benefits whatsoever. Debtor's creditors have received no consideration for the payments he made for his children's education.

      The Oberdick Court likewise never makes any determination on the reasonably equivalent value prong. Instead, the Court there piggybacks on the language in Cohen stating, "this Court has little hesitation recognizing that there is something of a societal expectation that parents will assist with [undergraduate] expense. . . ." In re Oberdick, 490 B.R. at 712. However, the Court adds a rather large caveat by stating the societal expectation is tempered by considerations of whether the parents "are able to do so." Id. By definition, if a debtor is insolvent at the time of a transfer or becomes insolvent as a result thereof, he was not able to fulfill this "societal expectation." If the Plaintiff shows at trial or in a motion for summary judgment that the Debtor was insolvent at the time of the Transfers or became insolvent as a result thereof, the logic undergirding the ruling in Oberdick is inapplicable. Likewise, if the Plaintiff is unable to prove that the Debtor was insolvent at the time of the Transfers or became insolvent as a result thereof, then no fraudulent transfer took place. In other words, the issue is a question of fact which is not appropriate to be determined by a motion to dismiss. As discussed above, the Court is required to assume the factual allegation of insolvency is true for the

purposes of this Motion, and leave the factual determination for a Motion for Summary Judgment or trial.

Similarly, Defendant's reliance upon In re Akanmu, 502 B.R. 124 (Bankr. E.D.N.Y. 2013) is misplaced. Defendant contends that Debtors children, though both over 18-years-old at all relevant times to this adversary proceeding, formed part of a "single economic unit" with the Debtor such that Debtor derived direct and indirect benefits from paying for their education. If the children were under 18, this analysis would make sense. However, as Akanmu makes clear, "The education provided by the defendants to these ***minor children*** constitutes both a direct and indirect benefit to their parents, who, with their children must be considered a single economic unit. . . ." Id. at 128-29 (emphasis added).

Defendant takes a remarkable leap from the clear language of Akanmu regarding minor children and cross-applies it to adults. Flowing from the analysis in Oberdick, whatever societal expectations there may be (as illustrated in FAFSA applications or under Connecticut's divorce statutes), is only applicable where the parent is able to support the adult child's education. If supporting the adult child's education makes the parent insolvent, he is, by definition, incapable of providing that support.

Defendant, next, bizarrely jumps to cases in which Debtor undoubtedly received economic value for its payments. In In re Tarin, 454 B.R. 179 (Bankr. D.N.M. 2011), Debtor paid a wedding planner and purchased flowers and decorations. In exchange for her payments she received a wedding planner, flowers, and decorations. This case is inapplicable and unrelated to the fact pattern in the case at bar. Here, Debtor paid for his children's education. In exchange for his payments his children (presumably) received an undergraduate education.

Surely if the Debtor had been paying Defendant for his own education <u>Tarin</u> might be illustrative of some point, but under these facts it is irrelevant.

<u>In re Vansteinberg</u>, 2003 Bankr. LEXIS 2069 (Bankr. D. Kan. Nov. 26, 2003), is equally unavailing for Defendant. Though Defendant is correct that the debtor in that case had no financial interest in a horse (owned by his wife) for which payments had been made, the Court noted the debtor received monetary value. For debtor's wife to afford to pay the horse expenses, she would have needed to get a job. This means she would have been unavailable for childcare. The debtor "testified the cost of horse care, at $484 a month, which included such things as the cost of entering horse shows and riding lessons, was less than child care would be for their minor children had she had worked outside of the home." <u>Id</u>. at *5. Though the Court never says so explicitly, the facts demonstrate a clear exchange of reasonably equivalent value—debtor pays for horse lessons, spouse provides child care.

<u>In re Gonzalez</u>, 342 B.R. 165 (Bankr. S.D.N.Y. 2006), is likewise inapposite when its actual facts are considered. The court's concern there centered upon the Debtor's relationship and obligations to a child. Though no paternity test had been done and the child's father was presumed under New York law to be the man the mother was married to at the time of the birth, it was an open secret that the Debtor was in fact the father. <u>Id</u>. at 167. The court was concerned with creating a bright-line rule requiring financially troubled Debtors to take on the additional expense of prosecuting a paternity action in order to avoid payments on behalf of unrecognized children. <u>Id</u>. at 171. However, even ignoring these facts, critically the Court stated the Debtor derived economic value:

> [T]here is no question that the Debtor used the property at issue during the relevant time period and that his use of the [property] constitutes ***economic value***. The Debtor also testified that [the

9

> child's mother] could not make the mortgage payments due under the note. Had the Debtor not made the payments, the Debtor would not have been able to use the [property]. Therefore, the Debtor received value, use of the [property], in exchange for his mortgage payments.

Id. at 172-73 (emphasis added). The "psychic" benefits referred to by the court and highlighted by Defendant in its Memorandum were only relevant insofar as they complimented the economic value. Id. at 172. In the case at bar, no such economic value exists for the payments made by the Debtor. All economic value, insofar as a Penn State education has value, was derived by the Debtor's children.

Contrary to the cases cited by Defendant, in In re Leonard, 454 B.R. 444 (E.D. Mich. 2011), the trustee sought to avoid and recover, as fraudulent transfers, tuition payments totaling more than $21,000 made by the debtor-parents to Marquette University for their 18-year-old son's education. The parties' cross-motions for summary judgment hinged on the question of whether the debtor-parents received "reasonably equivalent value" for the tuition payments. The court, ruling in the trustee's favor, reasoned that any indirect benefit received by the debtors could only be considered "value" if it were an economic benefit that was "concrete" and "quantifiable." Id. at 454-457. The court determined the debtor-parents did not receive any value in exchange for the tuition payments because the intangible benefits were not "concrete and quantifiable." The court also reasoned that the payment of college tuition did not satisfy any legal duty on the debtors' part since the parents had no ***legal*** obligation to provide their adult child with a college education. Id.

The most Defendant can claim Debtor received here were "psychic" in nature, certainly not concrete or quantifiable. Defendant cannot and has not attempted to claim Debtor received an economic benefit for his tuition payment. Neither can Defendant demonstrate Debtor had any

10

legal obligation to pay tuition for his adult children. For these reasons, Defendant's Motion to Dismiss should be denied.

### B. Connecticut law is appropriately invoked and controls the Second Count of the Complaint.

Defendant's argument in favor of dismissal of Count Two, even if accepted, still does not warrant dismissal. If the Court rules in Defendant's favor, Count Two would simply need to be rebranded as arising under Pennsylvania's Fraudulent Transfer law. Both jurisdictions, however, have adopted the Uniform Fraudulent Transfer Act. The language defining fraudulent transfers in the two statutory regimes is roughly identical. See Conn. Gen. Stat. §§52-552e(a)(2) and 52-552f(a); see also 12 Pa.C.S. §§5104(a)(2) and 5105. The statute of limitations is also the same. See Conn. Gen. Stat. §52-552j; see also 12 Pa.C.S. §5109. As such, this Court should not order a dismissal of Count Two, nor should it order a rebranding of Count Two under Pennsylvania's fraudulent transfer act.

Defendant appropriately cites Connecticut's choice of law on torts as controlling this particular issue. However, Defendant's analysis errs in a number of critical ways. Section 145 of the Restatement (Second) of Conflict of Laws lays out four factors to be considered in deciding where the forum for a particular cause of action should be seated. Considering these four factors, the most appropriate forum is Connecticut.

The Debtor's estate is appropriately located in Connecticut. 28 U.S.C. §1408(1). The bankruptcy court for the jurisdiction in which the estate is located exercises *in rem* authority over it. This means any diminution of said estate is an injury to the estate and the creditors within the jurisdiction where the estate is located. The estate and, by extension, the creditors have suffered injury in Connecticut by Debtor's payment of his children's tuition. Such payments have

reduced the value of the estate without any reasonably equivalent value being returned thereto.

Additionally, Defendant's assertion that the action which caused the injury took place in Pennsylvania strains common sense. The payments were directed by Debtor from his domicile in Connecticut. The reduction in value of the estate occurred in Connecticut. The creditors' claims against the estate and the assets thereof are entirely within Connecticut. The only thing that took place in Pennsylvania was the education of Debtor's children. The Debtor's direction of estate assets to Defendant caused the injury to the creditors of this bankruptcy estate.

While, admittedly, the Defendant is a state-related institution of the Commonwealth of Pennsylvania, this fact alone is insufficient to make a determination that Pennsylvania law takes precedence in these proceedings. The Debtor's domicile at the time of the transfers and presently is Connecticut. The estate is being administered by a Trustee empaneled in the District of Connecticut. The Trustee has a fiduciary obligation to administer the bankruptcy estate for the benefit of unsecured creditors in Connecticut.

For these reasons, Count Two should not be dismissed nor should it be rebranded under Pennsylvania law.

**V.     Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

                                                RONALD I. CHORCHES, TRUSTEE
                                                PLAINTIFF

By:     */s/ David T. Austin*____
       David T. Austin
       Federal Bar #: ct29578
       Law Offices of Ronald I. Chorches, LLC
       449 Silas Deane Highway
       Second Floor
       Wethersfield, CT  06109
       (860) 563-3955
       FAX: (860) 513-1577
       eMail: ronaldchorches@sbcglobal.net
       His attorney

By:     */s/ Marjorie R. Gruszkiewicz*____
       Marjorie R. Gruszkiewicz
       Federal Bar #: ct07989
       Law Offices of Ronald I. Chorches, LLC
       449 Silas Deane Highway
       Second Floor
       Wethersfield, CT  06109
       (860) 563-3955
       FAX: (860) 513-1577
       eMail: ronaldchorches@sbcglobal.net
       His attorney